UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

      - against -

NACHAMA HIRSCH,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CV-1006 (RRM)(RML)

ROSLYNN R. MAUSKOPF, United States District Judge:

On March 5, 2010, the government commenced this tax collection action against *pro se* defendant, Nachama Hirsch ("defendant" or "Nachama"), pursuant to 26 U.S.C. § 7401(a), seeking to collect $1,430,106.09, plus accruals, in unpaid taxes from tax years 1992 through 1997. (*See* Compl. (Doc. No. 1); Am. Compl. (Doc. No. 3).)[1] Currently before the Court is the government's motion for summary judgment. For the reasons set forth below, the motion is denied.

## BACKGROUND

**I. Tax Years 1992–1997**

Defendant married Benjamin Hirsch ("Benjamin") on May 27, 1986, and filed for divorce on June 12, 1997, in New York Supreme Court, Kings County. (Def.'s 56.1 Stmt. ¶ 5 (Doc. No. 16).) It is undisputed that in February 2000, while their divorce proceeding was underway, the couple filed late, joint returns for tax years 1992 through 1997. (*See* Gov't's 56.1 Stmt. ¶¶ 1–7; Aff. of Andrew Barone as to Def.'s Debt ("Barone Aff.") ¶¶ 3–8 (Doc. No. 20-4);

---

[1] The government requests a smaller amount in the instant motion – $919,900.51 as of July 29, 2013, plus accruals. (*See* Gov't's 56.1 Stmt. ¶ 7 (Doc. No. 20-2); Gov't's Mem. of L. Supp. Mot. Summ. J. ("Gov. Mem.") (Doc. No. 20-5).)

1

*see generally* Def.'s 56.1 Stmt.) On these returns, which neither party has included in the record, defendant and Benjamin reported to the Internal Revenue Service ("IRS") the amounts they jointly owed – $69,660 for 1992, $181,187 for 1993, $46,343 for 1994, $31,695 for 1995, $14,697 for 1996, and $25,097 for 1997. (Barone Aff. ¶¶ 3–8.) The IRS assessed these liabilities during March and April, 2000, as follows:

| Tax Year | Return Filed | Liability Reported and Assessed | Date Assessed | Additional Penalties Assessed | Amounts Paid or Credited | Due as of July 29, 2013 |
|---|---|---|---|---|---|---|
| 1992 | 2/7/00 | $69,660 | 4/10/00 | $15,220.80 (late filing); $16,912 (failure to pay); $64,158.65 (interest) | $330,066.23 | $0 |
| 1993 | 2/7/00 | $181,187 | 3/6/00 | $40,306.05 (late filing); $44,784.50 (failure to pay); $141,344.29 (interest) | $341,858.12 | $451,633.33 |
| 1994 | 2/7/00 | $46,343 | 3/6/00 | $2,237 (estimated tax); $9,835.42 (late filing); $10,928.25 (failure to pay); $27,706.39 (interest) | $4,630 | $183,309.13 |
| 1995 | 2/7/00 | $31,695 | 3/6/00 | $1,533 (estimated tax); $6,399.90 (late filing); $6,654.34 (failure to pay); $27,706.39 (interest) | $4,251 | $109,055.95 |
| 1996 | 2/29/00 | $14,697 | 4/3/00 | $668 (estimated tax); $2,872.80 (late filing); $2,263.24 (failure to pay); $4,177.37 (interest) | $2,929 | $43,164.46 |
| 1997 | 2/29/00 | $25,097 | 4/3/00 | $545.48 (estimated tax); $4,390.42 (late filing); $2,341.56 (failure to pay); $4,011.28 (interest) | $5,584 | $61,993.63 |
| | | | | | | Total: $919,900.51 |

(*Id.*; Gov't's 56.1 Stmt. ¶¶ 1–7.)

## II. Divorce Proceedings, the Innocent Spouse Application, and Benjamin's Bankruptcy

On or about September 19, 2000, defendant filed IRS Form 8857, a Request for "Innocent Spouse Relief" pursuant to 26 U.S.C. § 6015 (the "Innocent Spouse Application" (Def.'s Decl. Opp'n Mot. Summ. J. at 38 (ECF pagination) (Doc. No. 16)).)

On October 30, 2000, while defendant's Innocent Spouse Application was pending before the IRS, the New York Supreme Court, Kings County, granted defendant a judgment of divorce on grounds of constructive abandonment but stayed entry of judgment to allow defendant and Benjamin time to resolve ancillary matters, including equitable distribution of the marital property. *See* Decision After Trial, *Hirsch v. Hirsch*, No. 20231/97, at 33 (N.Y. Sup. Ct., Kings Cnty. May 10, 2002) (Yancey, J.) (the "Divorce Decision After Trial") (Gov. Ex. C).

On or about December 14, 2000, defendant submitted to the IRS an Innocent Spouse Questionnaire in support of her Innocent Spouse Application (the "Questionnaire") (Def.'s Decl. at 34–39 (ECF pagination)), listing her residence as 953 East 27th Street (the "953 Address"), and asserting that (1) "During the periods in question . . . . I lived in an apartment at [the 953 Address]" (*id*. ¶ 10); (2) "My husband has through his acts made my life very difficult. The [IRS] liability is not my fault as my husband, kept all the records, controlled all the bank accounts and managed all the property which gave rise to the liability" (*id*. ¶ 19); and (3) "I, Nachama Hirsch, residing at [the 953 Address] was assured by my husband . . . that [the tax] would be [paid]. He also told me that if I did not sign the returns additional adverse consequences would ensue . . . my husband pressured me into signing these returns and made me feel as if I had no other choice" (*id*.).

On May 10, 2002, New York Supreme Court, Kings County, issued the Divorce Decision After Trial. In this decision, the court reported that "Nachama testified that she tried to qualify

3

for 'innocent spouse' treatment by the [IRS] but that the [IRS] rejected her application for this treatment and she has appealed this determination." *Id*. at 22. The court also reported that "The parties agree that [Nachama] and the children will live at 945 East 27th Street [the "945 Address"] in Brooklyn since the Husband renovated one of the units of that property for her and the children." *Id*. at 33. The court also (1) denied Nachama's request to impose a constructive trust; (2) found that during the divorce proceedings, Benjamin had fraudulently conveyed property of the Hirsch Family Trust, in violation of New York Debtor & Creditor Law (N.Y.D.C.L.) §§ 275 and 276; (3) held that these fraudulent transactions should be set aside pursuant to N.Y.D.C.L. § 278, such that title would revert to Benjamin, *see* Memorandum and Order, *Musso v. Hirsch*, No. 08 CV 4735 (E.D.N.Y. Sept. 29, 2011) (Doc. No. 22) (discussing ambiguity of Divorce Decision After Trial concerning which transactions the state court contemplated unwinding); (4) ordered that Nachama receive 50% of the marital property, or $2,441,11.80, consisting of title to certain real properties whose equity value was $333,063.62, and fifteen annual payments of $140,736.54; (5) directed that another property be sold to reduce the couple's debt to the IRS; and (6) directed the parties to settle judgment within sixty days. *See* Divorce Decision After Trial.

On June 21, 2002, however, before entry of a judgment in the divorce action, Benjamin and several entities he allegedly controlled filed separate Chapter 11 bankruptcy petitions, thereby triggering the stay provisions of 11 U.S.C. § 362. *See* Ch. 11 Pet., *In re Benjamin Hirsch*, No. 02-17966 (E.D.N.Y. Bankr. June 21, 2002) (Doc. No. 1) ("Benjamin's Ch. 11 Pet.") (Gov't Ex. D); Memorandum and Order, *In re Benjamin Hirsch*, Nos. 05 CV 1454, 05 CV 2266 (E.D.N.Y. Mar. 10, 2006) (recounting history). Benjamin's bankruptcy petition lists

4

approximately forty creditors, including the IRS and Nachama, and lists Nachama's address as the 945 Address. (*See* Benjamin's Ch. 11 Pet.)[2]

On July 1, 2002, the state court entered a judgment of divorce, which the Bankruptcy Court found void in light of the bankruptcy stay. Decision and Order, *In re Benjamin Hirsch*, No. 02-17966 (E.D.N.Y. Bankr. Feb. 18, 2004) (Doc. No. 145 (the "Partial Stay Lift Order")). On February 18, 2004, the Bankruptcy Court issued a Decision and Order partially lifting the bankruptcy stay so that defendant and Benjamin could pursue entry of judgment in the state divorce action. (*See id.*) In subsequent years, defendant proposed several divorce judgments, to which Benjamin objected on grounds ranging from the Partial Stay Lift Order's terms to issue preclusion. *See* Decision and Order, *In re Benjamin Hirsch*, No. 02-17966 (E.D.N.Y. Bankr. Sept. 16, 2008) (Doc. No. 486), *modified in part*, *Musso v. Hirsch*, No 8 CV 4735 (E.D.N.Y. Sept. 29, 2011); *Musso v. Haspel*, No. 09 CV 445 (E.D.N.Y. Sept. 6, 2012) (Doc. No. 20); Decision and Order, *Hirsch v. Hirsch*, No. 20231/97, at 1 (N.Y. Sup. Ct. Kings Cnty. Feb. 1, 2013) (Prus, J.) (the "Feb. 1, 2013 Divorce Order") (recounting history).

On July 14, 2003, the IRS issued a Notice of Determination relating to defendant's September 2000 Innocent Spouse Application, which the IRS construed as a request for relief under 26 U.S.C. § 6015(f) (the "Notice"). (Def.'s Decl. at 155–56 (ECF pagination).) The Notice was addressed to the 945 Address, and indicates that "[w]e've determined that . . . we cannot allow your request."[3] The Notice also advises:

> You need to file your petition for review by the Tax Court within 90 days from the date we mailed this letter. The Tax Court considers only petitions filed within

---

[2] The Bankruptcy Court converted Benjamin's bankruptcy petition to a Chapter 7 petition on January 4, 2007.

[3] The Notice is hardly a model of clarity. In addition to asserting that it "cannot allow" defendant's request, it also explains, in the very same series of bulleted points, the various consequences "when we grant your requested relief in full . . . when we deny your request in full . . . [and] when we partially grant your request." It later discusses circumstances in which the IRS will refund monies paid.

5

> this 90-day period . . . . **PLEASE NOTE: The law sets the time you're allowed for filing your petition for review with the Tax Court. We cannot extend or suspend the time period.**

(*Id.*) (emphasis in original).

The record is wholly unclear as to whether defendant sought review by the Tax Court of any IRS determination related to her request for innocent spouse relief. First, as recounted in Judge Yancy's Divorce Decision After Trial, issued in 2002, and on which the government relies heavily in its reply papers addressing defendant's innocent spouse claim, defendant testified that the IRS had denied her September 2000 Innocent Spouse Application, and that she was pursing an appeal. However, as discussed more fully *infra*, the only notice in the record concerning a denial of defendant's September 2000 Innocent Spouse Application is dated July 14, *2003*, well after Judge Yancy's opinion and defendant's testimony. Second, there is no indication in the record that defendant sought Tax Court review of the July 2003 notice. Indeed, defendant claims never to have received that notice, and the parties dispute whether the IRS mailed the Notice to defendant's last known address. (*See* Discussion, Part III(C), *infra*.).[4]

On March 5, 2010, the government commenced this action, to which Nachama is the sole defendant.

On December 16, 2011, the Bankruptcy Court ordered the Trustee to make a partial distribution to the United States Treasury in the amount of $225,000. *In re Benjamin Hirsch*, (E.D.N.Y. Bankr. Dec. 16, 2011) (Doc. No. 582). The record is unclear as to what debt this partial distribution was intended to cover, and whether the Trustee complied with the order.

---

[4] Finally, and as discussed more fully below, there appears to be a legal issue, unaddressed by the parties on this motion, as to whether, in 2003, the Tax Court had statutory authority to hear petitions for review of adverse decisions related to equitable applications brought under 26 U.S.C. § 6015(f) such as the one brought by defendant for innocent spouse relief.

On February 1, 2013, the state court determined that it would re-sign the judgment of divorce that Justice Yancey signed prematurely in 2002, and directed the parties to settle judgment in strict conformity with the Divorce Decision After Trial. *See* Feb. 1, 2013 Divorce Order. Benjamin's bankruptcy action, however, remains pending.

On October 28, 2013, the government filed the instant motion.

## DISCUSSION

**I. Standard of Review**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits in the record demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n. 1 (2004). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Vas–Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (2d Cir. 1991).

7

"A plaintiff opposing a motion for summary judgment must lay bare his proof in evidentiary form and raise an issue of fact sufficient to send to the jury." *Longi v. Cnty. of Suffolk*, No. 02 CV 5821, 2008 WL 858997, at *6 (E.D.N.Y. Mar.27, 2008) (internal quotation marks omitted). The plaintiff "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("[T]he nonmoving party must come forward with 'specific facts showing there is a genuine issue for trial.'" (quoting Fed. R. Civ. P. 56(e))); *Anderson*, 477 U.S. at 256 (stating that non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor"). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

"In general, a government tax assessment is entitled to a presumption of correctness." *United States v. Washington*, No. 10 CV 2149, 2010 WL 2654010, at *1 (E.D.N.Y. June 25, 2010) (quoting *United States v. McCombs*, 30 F.3d 310, 318 (2d Cir. 1994)). A taxpayer has "the burdens of both production and of persuasion in proving by a preponderance of the evidence, that the deficiency is incorrect." *Id*. (internal quotation marks omitted).

## II. Government's Partial Compliance with Local Civil Rule 56.2

As a preliminary matter, the Court notes that the government has failed to fully comply with Local Civ. R. 56.2, which requires that any party moving for summary judgment against a

*pro se* party serve and file, along with its motion papers, (1) a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment (a "Rule 56.2 Notice"), whose text the local rule provides, and (2) the full texts of Fed. R. Civ. P. 56 and Local Civ. R. 56.1 attached. Local Civ. R. 56.2. The "linchpin of Rule 56.2 is whether a *pro se* [litigant] ultimately is aware of the basic requirements and ramifications of the adjudication of the summary judgment motion against him." *Forsyth v. Federation Empl. & Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005) (finding that where plaintiff's opposition papers indicated that he understood his responsibilities under Rule 56, neither the district court nor defendants were required to provide plaintiff with notice under Rule 56.2"), *abrogated on other grounds*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2009). The purpose of this rule is to ensure that a *pro se* party "understands its burden in responding to a motion for summary judgment, and the consequences of failing to do so." *Hartford Life Ins. Co. v. Einhorn*, 452 F. Supp. 2d 126, 129 (E.D.N.Y. 2006). "The failure to include a Rule 56.2 Statement with a motion for summary judgment is grounds for the denial of the motion *if* it is not otherwise clear from the record that the pro se litigant understood the nature of the summary judgment motion." *Gayle v. Harry's Nurses Registry, Inc.*, No. 07 CV 4672, 2012 WL 686860, at *3 (E.D.N.Y. Mar. 2, 2012) (internal quotation marks omitted).

Here, the government served defendant with a Rule 56.2 Notice and included the full text of Fed. R. Civ. P. 56 but failed to include the full text of Local Rule 56.1. (*See* Doc. No. 20-2.) This error alone does not constitute a reason to deny the government's motion. Defendant received a Rule 56.2 Notice and a copy of Fed. R. Civ. P. 56, and her opposition papers reflect that she understands the nature of this motion – she responds to the government's statement of facts, raises legal defenses to the motion, and annexes approximately thirteen exhibits. *See Steele v. Smelley*, No. 10 CV 1990, 2012 WL 1019999, at *3 n.3 (E.D.N.Y. Feb. 23, 2012)

(report and recommendation) (finding that defendants' failure to serve last page of Rule 56.2 Notice did not warrant denying motion, where plaintiff received full text of Fed. R. Civ. P. 56 and opposed the motion), *adopted by* 2012 WL 1019158 (Mar. 26, 2012); *Tafuto v. New York State Office for Children and Family Serv.*, No. 08 CV 8433, 2012 WL 4459803, at *4 (S.D.N.Y. Sept. 25, 2012) (finding that movants' failure to serve Rule 56.2 Notice did not warrant denying motion, where *pro se* opponent demonstrated understanding by filing memorandum of law, supporting exhibits and affidavits, and counterstatement of facts); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") Accordingly, the government's failure to provide defendant with the full text of Local Civ. R. 56.1 does not warrant denying summary judgment here.

### III. Innocent Spouse Relief

#### A. Types of Innocent Spouse Relief

Generally, where spouses file a joint tax return, "each spouse's liability for that tax is joint and several." *Callaway v. C.I.R.*, 231 F.3d 106, 111 (2d Cir. 2000) (citing 26 U.S.C. § 6013(d)(3) ("[I]f a joint return is made, . . . liability with respect to the tax shall be joint and several.")); *see also Stanwyk v. C.I.R.*, T.C. Mem. 2009-73, at *1 (U.S. Tax Ct. Mar. 31, 2009) ("Spouses who file joint returns are jointly and severally liable for the entire tax liability, which may be collected from either spouse.").

In certain circumstances however, a joint filer may seek relief from joint and several liability. *Stanwyk*, T.C. Mem. 2009-73, at *1 (citing 26 U.S.C. § 6015). For example, Section 6015(b) provides for innocent spouse relief in certain circumstances where the joint return understates the amount the taxpayers owe. *See* 26 U.S.C. § 6015(b). Section 6015(c), in turn,

10

provides for innocent spouse relief in certain circumstances where the IRS asserts a deficiency in the return and the taxpayers are legally separated, no longer married, or not living together. *See* 26 U.S.C. § 6015(c). Also, and particularly relevant here, Section 6015(f) grants the IRS discretion, in certain circumstances, to grant relief on equitable grounds to a joint filer who does not qualify for relief under Section 6015(b) or (c):

> (f) Equitable relief.--Under procedures prescribed by the Secretary, if--
> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
> (2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability.

26 U.S.C. § 6015(f); *see* Rev. Proc. 2000-15 (discussing factors IRS should consider in evaluating a Section 6015(f) claim), *superseded by* Rev. Proc. 2003-61.

It appears that Sections 6015(b) and (c) are inapplicable here, as defendant and Benjamin did not understate liability on the joint returns in question, and the IRS has not asserted a deficiency in the returns. Moreover, the parties appear to agree that defendant's September 2002 Innocent Spouse Application was brought pursuant to Section 6015(f). As discussed immediately below, this is a critical distinction, as it appears that, notwithstanding the language of the July 2003 Notice purportedly denying innocent spouse relief, the Tax Court did not have jurisdiction to review adverse decisions arising from equitable claims brought pursuant to Section 6015(f).

**B. Tax Court Jurisdiction Over Section 6015(f) Claims**

The current version of Section 6015(e) grants the United States Tax Court jurisdiction to review denials of innocent spouse applications under not only Sections 6015(b) and (c), but also under Section 6015(f), provided the petitioner requests such review by the statutory deadline:

11

> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, *or in the case of an individual who requests equitable relief under subsection (f)--*
> (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed-- . . . (ii) *not later than the close of the 90th day after* the date the Secretary mails, by certified or registered mail to the taxpayer's *last known address*, notice of the Secretary's final determination of relief available to the individual.

26 U.S.C. § 6015(e) (emphases added). However, this provision did not take effect until December 20, 2006, and applies to tax liabilities arising or remaining unpaid on or after the date of the provision's enactment. *Pollock v. C.I.R.*, 132 T.C. No. 3 at 25 (Tax Ct. 2009); *Green v. C.I.R.*, T.C. Mem. 2008-28, at *2 (Tax Ct. 2008).

Prior to its 2006 amendments, Section 6015(e) was silent as to whether the Tax Court had jurisdiction to review "nondeficiency stand-alone petitions" under Section 6015(f), such as defendant's Innocent Spouse Application. As a result, courts questioned and debated whether the Tax Court had such jurisdiction. In 2002, the Tax Court held, at the government's suggestion, that the Tax Court had such jurisdiction. *Ewing v. Commissioner*, 118 T.C. No. 494 (2002), *rev'd* 439 F.3d 1009 (9th Cir. 2006). In 2004, however, the Second Circuit expressed doubt regarding whether the Tax Court had such jurisdiction. *Maier v. C.I.R.*, 360 F.3d 361, 363 n.1 (2d Cir. 2004) ("[T]he question of the jurisdiction of the Tax Court in the case of an electing spouse's petition for review of an IRS determination under § 6015(f) when the court does not already have deficiency jurisdiction is not free from doubt; only petitions to review IRS determinations under subsections (b) and (c) are expressly enumerated in § 6015(e) . . . .") (citing *In re French*, 255 B.R. 1, 2 (Bankr. N.D. Ohio 2000) ("Congress chose to exclude from judicial review the issue of whether a taxpayer is entitled to equitable relief under § 6015(f).")). In subsequent decisions, the Ninth Circuit, Eighth Circuit, and Tax Court found that, absent a

statutory amendment, the Tax Court lacked jurisdiction to hear these Section 6015(f) appeals. *See Commissioner v. Ewing*, 439 F.3d 1009 (9th Cir. 2006); *Bartman v. Commissioner*, 446 F.3d 484 (8th Cir. 2006); *Billings v. I.R.S.*, 127 T.C. No. 7 (Tax Ct. 2006). Congress responded by amending the statute in 2006.

Thus, for tax liabilities arising or remaining unpaid on or after December 20, 2006, the amendment gives the Tax Court jurisdiction to hear a taxpayer's appeal concerning a 6015(f) application, provided the taxpayer petitions the Tax Court within ninety days of the denial.[5] The amendment, therefore, applies to only a subset of 6015(f) petitioners whose liability remained unpaid as of the amendment's effective date – including (1) those whose innocent spouse applications the IRS had not yet decided, (2) those "to whom the [IRS] had . . . mailed a notice of determination within the 90 days preceding the amendment," and (3) those who, prior to the statutory amendment, had filed petitions with the Tax Court, which remained pending at the time of the statutory amendment. *Pollock*, 132 T.C. No. 3 at 36 ("We had no jurisdiction to hear section 6015(f) nondeficiency stand-alone cases before the amendment, so the amendment to section 6015 was Congress creating jurisdiction for nondeficiency stand-alone claims where there had been none before.").

Defendant's September 2000 Innocent Spouse Application, decided in July 2003, falls into none of these categories. As such, the 2006 amendments do not appear to apply to defendant's application, and it appears that the Tax Court lacked jurisdiction to review that application.[6] Neither party addresses this critical issue, or its impact on the government's

---

[5] This ninety-day period is jurisdictional and, therefore, cannot be equitably tolled. *See*, *e.g.*, *Pollock*, 132 T.C. No. 3 at 32.

[6] Moreover, based on Judge Yancy's decision, it is unclear whether some type of Tax Court review was ongoing at the time of defendant's testimony in her divorce proceeding. It appears that prior to 2006, the Tax Court routinely and mistakenly exercised jurisdiction over such appeals. *See*, *e.g.*, *Maier v. C.I.R.*, 360 F.3d 361, 363 n.1 (2d Cir. 2004). .

motion; as such, the Court cannot grant the government's motion at this stage. Moreover, as discussed below, factual issues related to defendant's last known address further preclude summary judgment at this stage.

**C.    Last Known Address**

As noted, once the IRS mails to a taxpayer's last known address a notice denying her innocent spouse application, the taxpayer has ninety days to appeal the determination to the Tax Court. 26 U.S.C. § 6015(e). Generally, a taxpayer's last known address is the address that "appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the [IRS] is given clear and concise notification of a different address." 26 C.F.R. § 301.6212–2(a).[7] However, the IRS "will" update its records of taxpayer addresses by using the United States Postal Service's ("USPS") National Change of Address database (the "NCOA database"). *Id*. § 301.6212–2(b)(2)(i).[8] If the IRS obtains a new taxpayer address from the NCOA database,

---

[7] "Further information on what constitutes clear and concise notification of a different address and a properly processed Federal tax return can be found in Rev. Proc. 90-18 (1990-1 C.B. 491) or in procedures subsequently prescribed by the Commissioner." 26 C.F.R. § 301.6212–2(a). The Revenue Procedure that was in effect in July 2003 (when the IRS issued the Notice) explains:

> (a) Clear and concise written notification is a written statement signed by the taxpayer and mailed to an appropriate Service address informing the Service that the taxpayer wishes the address of record changed to a new address. In addition to the new address, this notification must contain the 'full name and old address as well as the taxpayer's social security number . . . . In all cases, clear and concise written notification must be specific as to a change of address. Thus, a new address reflected in the letterhead of taxpayer correspondence will not by itself serve to change a taxpayer's address of record.
> (b) Correspondence sent by the Service that solicits or requires a response by the taxpayer that is returned to the Service by the taxpayer with corrections marked on the taxpayer's address information will constitute clear and concise written notification of a change of address.
> (c) Additionally, Form 8822, Change of Address, can be used by taxpayers to provide clear and concise written notification of a change of address pursuant to this revenue procedure.

Rev. Proc. 2001-8, *superseded by* Rev. Proc. 2010-16.

[8] Internal Revenue Manual ¶ 4.8.9.8.2.1 explains that when the IRS changes a taxpayer's last known address based on an NCOA database update, the IRS's transcripts, known as "IMFOLE," "BMFOLE," and "ENMOD," will identify the address change with code "TC 014." IRM ¶ 4.8.9.8.2.1 (2013) (Doc. No. 21-5.)

14

this new address becomes the taxpayer's last known address until the taxpayer (a) files, and the IRS properly processes, a tax return "with an address different from the address obtained from the NCOA database"; or (b) provides the IRS with "clear and concise notification of a change of address, as defined in procedures prescribed by the Commissioner." *Id*. § 301.6212–2(b)(2)(ii).

Here, the government does not even assert that the IRS complied with the statute and regulations' "last known address" requirement. In fact, the government provides no evidence concerning what address appeared on defendant's most recently filed tax return as of July 14, 2003 (which, under ordinary circumstances, would be a return for tax year 2002), or whether a qualifying intervening event changed the last known address before the government issued the Notice.

Further, with regard to defendant's address, the record reflects only the following:

- On or about September 19, 2000, defendant filed the Innocent Spouse Application listing her address as c/o a New Jersey law firm. (*See* Innocent Spouse Application.)
- On or about November 3, 2000, defendant's then-attorney, Douglas Eisenberg, may have sent a letter to "Ms. Tong" of the IRS, via facsimile and regular mail, purporting to "confirm[]" that defendant's address was the 953 Address. (Nov. 3, 2000 Letter (Def.'s Decl. at 159 (ECF pagination)).) However, defendant annexes a version of this letter that is neither signed by Eisenberg nor printed on his letterhead, and she provides no proof that Eisenberg actually sent the letter to the IRS. (*See id*.)[9]

---

[9] Moreover, this letter, even if Eisenberg sent it, does not constitute "clear and concise notification of a different address" under the regulations. 26 C.F.R. § 301.6212–2(a); *see* Rev. Proc. 2001-8; *Macdonald v. C.I.R.*, T.C. Mem. 2014-42, at *8 (Tax Ct. 2014) ("Simply putting a different return address on an envelope or letter mailed to the IRS is not enough.").

- In December 2000, defendant listed the 953 Address on her Innocent Spouse Questionnaire. (*See* Innocent Spouse Questionnaire.)[10]

- On May 10, 2002, the state court reported, in the Divorce Decision After Trial, that defendant and Benjamin agreed that defendant and the children will live at the 945 Address. Divorce Decision After Trial at 33. Benjamin's Chapter 11 Petition, dated June 21, 2002, also lists defendant as a creditor at the 945 Address. (*See* Benjamin's Ch. 11 Pet.). Whether defendant ever actually lived at the 945 Address is unclear.

- The Notice, dated July 14, 2003, purports to be "Certified Mail" and lists defendant's address as the 945 Address. (*See* Notice.) The record, however, contains no proof that the IRS actually mailed the Notice.

- Defendant asserts that, "to [her] knowledge and memory," she never received the Notice. (Def.'s Decl. ¶ 27.) Defendant also states that (1) at her request, the IRS faxed her a copy of the Notice on June 28, 2013, and (2) "[u]pon review of the . . . faxed copy of the [Notice] it appears that it was mailed to [the 945 Address]. At that time I was living at [the 953 Address]."[11] (*Id*. ¶ 29).

---

[10] These Innocent Spouse Questionnaire responses, however, do not constitute "clear and concise notification of a different address" under the regulations. 26 C.F.R. § 301.6212–2(a); *see* Rev. Proc. 2001-8; *Macdonald*, T.C. Mem. 2014-42, at *8.

[11] The phrase, "[a]t the time," is somewhat ambiguous. Presumably defendant means that she lived at the 953 Address in July 2003, though the statement could also mean that she lived there in June 2013. (Def.'s Decl. ¶ 29.) Other than the two documents defendant cites from the year 2000 – her Innocent Spouse Questionnaire and the purported November 3 Letter from Eisenberg – she provides no substantiation that her last known address in July 2003 was the 953 Address.

- The only additional evidence the government provides on the subject of defendant's address post-dates the Notice and, therefore, appears irrelevant to determining her last known address as of July 14, 2003.[12]

Moreover, the government provides no proof that the IRS actually mailed the Notice to the 945 Address.

Accordingly, the record is unclear as to several factual matters, including what defendant's last known address was on July 14, 2003, whether the IRS actually mailed the Notice to that address, and whether any portion of the tax liability has been paid to the government in the course of Benjamin's bankruptcy proceeding. Further, the parties offer no argument concerning why it is material whether the IRS mailed the Notice to defendant's last known address in July 2003, given that, contrary to the Notice, the Tax Court appears to have lacked jurisdiction before December 2006 to hear a taxpayer's appeal concerning a non-deficiency, stand-alone innocent spouse application under 26 U.S.C. § 6015(f). *See Pollock*, 132 T.C. No. 3 at 36. For these reasons, the government has failed to carry its burden on summary judgment at this stage.

---

[12] First, Andrew Barone, an Advisor at the IRS Technical Services Unit, states that for tax year 2003, third-party entities reported to the IRS that defendant's address was the 945 Address. (*See* Suppl. Decl. of Andrew Barone ("Suppl. Barone Decl.") ¶¶ 3–4 (Doc. No. 21-4).) More specifically, the IRS's "IRMF On Line Transcript System" reports that for tax year 2003, four tax forms from third-party entities – an insurance company, the State of New York, and two mortgage corporations – list defendant's address as the 945 Address. (*Id*. ¶ 4 and Ex. 1.) Even if such forms could determine a taxpayer's last known address – and the government provides no authority that they can – the IRMF transcript reflects that these forms went on file with the IRS between March and June 2004 (that is, months after the IRS issued the Notice). Second, the government cites the IRS's "IMFOLE" and "ENMOD" records, which reflect that on the thirty-sixth or thirty-seventh week of 2006, un unspecified last known address for defendant was changed to 941 East 27th Street in Brooklyn. As stated above, none of this information clarifies what defendant's last known address was on July 14, 2003.

## CONCLUSION

For the reasons stated herein, the government's motion for summary judgment is denied at this stage.

The parties are ordered to appear before the undersigned for a status conference on October 1, 2014 at 2:30 p.m.. By September 24, 2014, the parties shall confer and file with the Court with a joint status report outlining proposed next steps for bring this case to a resolution by settlement, motion or trial as appropriate.

The government is hereby Ordered to serve a copy of this Memorandum and Order on the *pro se* defendant by September 9, 2014, and immediately file proof of such service.

SO ORDERED.

Dated: Brooklyn, New York
September 4, 2014

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge